JUDSON *v.* STONINGTON MINING CO.

CORPORATIONS—ASSIGNMENT OF STOCK—VALIDITY.

> J. wrote R., inclosing a blank assignment of certain shares of
> stock in a corporation, saying that, if she would sign and
> acknowledge the same, and send it to a specified bank, he
> would pay her a certain sum; whereupon she sent the assign-
> ment to the bank, stating merely that it was forwarded at
> the request of J.  The bank delivered the assignment, but J.
> did not remit until after R., with knowledge of the delivery,
> had written several letters requesting payment.  When the
> money was finally sent, R. refused to accept it, and made a
> new assignment of the stock to a third person.  *Held,* that
> title to the stock passed to J. ·

Appeal from Houghton; Streeter, J.   Submitted June
5, 1901.  Decided July 19, 1901.

Bill by James B. Judson against the Stonington Mining
Company to wind up its affairs.   From an order setting
aside a sale by the receiver, on the petition of Joseph
Croze, complainant appeals.   Reversed.

In May, 1895, complainant filed a bill in chancery to
wind up the affairs of the defendant corporation.   It owned
the west half of section 10, township 52 N., range 36 W.
The land was conveyed to the company in 1854.   The
company was organized December 1, 1854.   Nothing was
paid upon the capital stock.   There were three stock-
holders.   The number of shares was 20,000.   Henry
Acker, of Detroit, owned 15,000 shares; one Pomeroy, of
Stonington, Conn., 4,000; and one Palmer, of Stonington,
1,000.   There is no evidence that anything further was
done towards carrying out the purposes of the corporation.
The taxes were not paid, and various parties own the tax
titles, having obtained deeds from the State.   Regular
proceedings were taken to wind up its affairs, a receiver

appointed, a sale of the land ordered, and complainant, Judson, bought it in for $300. The sale was made August 30, 1898. On November 9, 1898, it was confirmed, and a receiver's deed issued to complainant. On October 25, 1899, petitioner, Croze, claiming to be a stockholder, filed a petition for the vacation of the order confirming the sale. This petition was granted, and from the order or decree setting aside the sale complainant has appealed.

*Chadbourne & Rees*, for petitioner.

*E. C. Chapin*, for complainant.

GRANT, J. (*after stating the facts*). Both complainant and Mr. Croze claim to own the stock which belonged to Mr. Acker. Each claims to have obtained title thereto by purchase from his heirs. The right of Mr. Croze to interfere depends upon his title to the stock. Mr. Judson, in his bill of complaint, stated that he was the owner of 1,200 shares of the stock; that he did not know of any other stockholders, and, after diligent search and inquiry, had not been able to find any. He subsequently learned of the Acker heirs,—Mrs. Rice and Miss Acker. He thereupon, on March 19, 1898, wrote Mrs. Rice, inclosing a blank assignment of the stock, saying:

"If you and your sister will sign same and acknowledge it before a notary public with seal, and send same to the City National Bank of Lansing, Mich., we will pay you $20."

She thereupon wrote to the City National Bank, inclosing the assignment, and saying:

"The inclosed papers are forwarded to you at the request of Judson Bros., Ashland Blk., Chicago, Ill., by Anna M. Rice, 187 East Ninth St., St. Paul, Minn."

The bank delivered the papers to Judson Bros. For some reason they did not remit the $20, and shortly after Mrs. Rice wrote them in regard to it. Judson Bros. replied, explaining the delay, but did not remit. To this Mrs. Rice replied, on the 14th of April:

"Your letter of the 12th inst., received this morning, is satisfactory in its explanation of the delay in payment. Hoping to hear from you again soon, I am, truly yours."

No other correspondence seems to have passed until February 4, 1899, when one Sanborn, the attorney for Mrs. Rice and Miss Acker, wrote to Judson Bros., stating that, in consideration of the conveyance made by them to Judson Bros., they had agreed to remit her $20, but had not done so up to that date, and requesting them to send a check or draft for the amount. Judson Bros. then remitted the $20 by draft through Mr. Sanborn. Mr. Sanborn tendered the draft to Mrs. Rice, but she refused it, having, as she stated, made other arrangements. On February 27, 1899, Mrs. Rice and Miss Acker made an assignment of all their right, title, and interest in said stock by power of attorney to one Pierce Butler. On April 24, 1899, Butler transferred the same to Mr. Croze.

We think that whatever title Mrs. Rice and Miss Acker had to this stock passed to Judson Bros. by the assignment to them. Mrs. Rice did not send the assignment to the City National Bank as her agent, with instruction to deliver upon the payment of the money, but with the unqualified statement that the papers were forwarded to the bank at the request of Judson Bros. The letter authorized the delivery by the bank to Judson Bros. Under this arrangement the title passed, and Judson Bros. became indebted for the agreed price. Mrs. Rice recognized the situation by writing to Judson Bros. with knowledge that the bank had delivered the stock to them, and accepted their explanation for the delay. Her attorney again wrote for the money, in response to which letter Judson Bros. remitted. It follows that Mr. Croze, having no stock, was not entitled to interfere.

The decree will be reversed, and the petition dismissed.

The other Justices concurred.